UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUN YOUNG LIM,

                Plaintiff,

– against –

RADISH MEDIA, INC., and SEUNG-YOON LEE,

                Defendants.

**OPINION & ORDER**

21 Civ. 4379 (ER)

RAMOS, D.J.:

Jun Young Lim brought this action against Radish Media, Inc., and Seung-Yoon Lee alleging that he did not receive the contractual equity interest that he was entitled to based on his employment with Radish Media. Doc 1. This Court granted Defendants' motion to dismiss, *Lim v. Radish Media, Inc.*, No. 21 Civ. 4379 (ER), 2022 WL 2292768, at *1 (S.D.N.Y. June 24, 2022), and the Second Circuit affirmed in part, vacated in part, and remanded for further proceedings, *Lim v. Radish Media Inc.*, No. 22-1610, 2023 WL 2440160, at *3 (2d Cir. Mar. 10, 2023). Lim then filed an amended complaint reasserting claims for breach of contract and unjust enrichment, while adding a new claim for promissory estoppel. Doc. 35. Defendants have moved to dismiss the amended complaint for failure to state a claim. Doc 36. For the reasons set forth below, the motion is GRANTED.

**I.   BACKGROUND**

    **A.  Factual Background**

The following facts are based on the allegations in the amended complaint, which the Court accepts as true for purposes of this motion. *See*, *e.g.*, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Lim is now a New York resident, but he was a California resident at the time he filed the original complaint. ¶ 1.[1]  Radish Media is incorporated in Delaware with its principal place of business in New York. ¶ 2.  Seung-Yoon Lee is a resident of South Korea. ¶ 3.

Radish Media is a publishing and digital media company that provides a mobile platform for the publication of serialized fiction. ¶ 6.  It was created from the same corporate entity as another company, Byline Media. ¶ 18.  Lee was the co-founder, chief executive officer ("CEO"), and a major shareholder of Radish Media and Byline Media at all relevant times. ¶ 7.  As CEO, he had the authority to enter into contracts on behalf of these companies.  *Id.*

Lim and Lee are close personal friends and have known each other for at least twelve years. ¶ 8.  In January 2015, Lim and Lee agreed that Lim would become Head of Product at Byline Media starting in March 2015. ¶ 9.  Lim alleges that he and Lee entered an oral agreement as to the terms of his employment with Byline Media and that the agreement was confirmed in an email exchange between them in January 2015. ¶ 10.  In a January 22, 2015 email first raised in the amended complaint with the subject line "Contract," Lim wrote to Lee that he could "start on March 9 [2015], for 1.2% with 4500 USD per month and the terms/perks discussed before and to be determined." ¶ 11.  Lim also said he was "[h]appy to discuss derivations, intangibles, etc. and articulate [his] opinion more if [Lee] like[d]."  *Id.*  In response, Lee wrote to Lim on January 23, 2015: "We will draft a formal contract within a few weeks, but do consider basic terms all agreed with this email."  *Id.*  According to Lim, the terms of the employment agreement confirmed by the January 2015 email exchange included a salary of $54,000 a year and a 1.2% interest in the company, one-quarter of which would vest after one year of employment with the company. ¶ 12.  After the first year, the balance of Lim's equity

---

[1] Unless otherwise noted, citations to "¶ __" refer to the amended complaint, Doc. 35.

interest would vest at a rate of 1/48 each month until the entire grant vested. *Id.* The vested shares would become available to Lim "once the appropriate plan had been put in place." *Id.* Lim's employment would be at-will. *Id.*

Lim left his prior employment and joined Byline Media on March 9, 2015, in reliance on the terms he had discussed with Lee. ¶ 13. In his prior employment, he had received greater base compensation. ¶ 14. Shortly after Lim began working at Byline Media, the company agreed to increase his equity stake to 1.5%. ¶ 17.

In 2016, Lee created a new company called Radish Media. ¶ 18. Radish Media was created from the same corporate entity as Byline Media, and some of Byline Media's employees—including Lim—moved to Radish Media. *Id.* Lee confirmed to Lim that the agreed upon salary, equity stake, and vesting schedule would remain the same. ¶ 19.

At some time before April 2016, Lim provided notice that he would be leaving Radish Media. ¶ 20. In the amended complaint, Lim has attached a copy of a draft letter agreement. Doc. 35-1. On April 27, 2016, Lee received the draft letter agreement from Radish Media's lawyers detailing employment terms for Lim. ¶¶ 20–21. The draft letter read as though it was created before Lim started at the company, stating that Lee was excited for Lim to join Radish Media. ¶ 22. The initial draft indicated that Lim was entitled to 1.5% of the company founders' shares, which Lim characterizes as incorrect. ¶ 23. A subsequent version of the draft sets the equity grant at 1.5% of the founders' shares and the employees' options pool for a total of 536.6 shares. ¶ 24. According to the draft letter, Lim's equity grant was predicated on, among other things, (1) Radish Media "establishing a Stock Option/Stock Issuance Plan for its service providers" and (2) "approval by the Company's Board of Directors to grant the options contemplated hereby." Doc. 35-1.

On June 20, 2016, Lim voluntarily left his employment at Radish Media. ¶ 25. Two days later, on June 22, Lee emailed Lim the revised draft letter but instructed him not to sign it. ¶¶ 26, 28. Lee also stated that he had calculated that Lim was entitled to

3

536.6 shares of Radish Media stock and that his vesting period ran until June 20, 2016. ¶ 26. Almost two years later, in a March 2018 email to Lim, Lee calculated that 167.687 of the shares had vested at the time of Lim's departure based on a start date of January 3, 2015. ¶ 30. The calculation was as follows: 536.6 shares multiplied by 15/48 months equals 167.687 shares. *Id.* Since leaving Radish Media, Lim has demanded payment of his equity interest several times, and Radish Media has refused to grant him his equity in the company—even the equity that the company allegedly acknowledges he is entitled to. ¶¶ 29, 31–34.

On May 11, 2021, Kakao Entertainment announced that it had agreed to acquire Radish Media for $440 million. ¶ 35. Based upon the valuation, Lim alleges that his interest in the company would have been worth as much as $2,200,000. ¶ 39.

### B. Procedural History

Lim brought this action on May 14, 2021, approximately five years after he left Radish Media. Doc 1. Lim sought a declaratory judgment against Radish Media that he is entitled to the equity interest that he earned during his employment. *Id.* ¶¶ 27–35. Lim also brought a breach of contract claim against Radish Media, as well as an unjust enrichment claim against both defendants. *Id.* ¶¶ 36–51. On November 5, 2021, Defendants moved to dismiss, arguing that the complaint was barred by the statute of limitations and, in the alternative, failed to plead a plausible cause of action. Doc 21. On June 24, 2022, this Court granted the motion to dismiss. *Lim*, 2022 WL 2292768, at *1. The Court found that Lim's claims were barred by the statute of limitations and failed on alternative grounds as well. *Id.* at *2–7. And the Court denied leave to amend because no set of facts could cure the complaint's deficiencies with respect to the statute of limitations. *Id.* at *7.

The Second Circuit affirmed this Court's judgment in part and vacated in part, concluding that it was not clear from the face of the complaint whether Lim's claims were barred by the statute of limitations. *Lim*, 2023 WL 2440160, at *1. But the Second

Circuit also held that this Court had properly dismissed all claims on alternative grounds because Lim failed to state a claim for breach of contract, the breach of contract claim was barred by the statute of frauds, the declaratory judgment claim was unduly duplicative, and the unjust enrichment claim aimed to impermissibly bypass the statute of frauds. *Id.* at *2. The Second Circuit remanded for this Court to decide whether Lim should be permitted to amend the complaint. *Id.* at *2–3.

This Court held a conference on November 14, 2023, and granted Lim leave to amend. Lim filed an amended complaint on November 29, 2023. Doc. 35. He brings claims for breach of contract against Radish Media, ¶¶ 40–47, unjust enrichment against Lee, ¶¶ 48–56, and promissory estoppel against Radish Media, ¶¶ 57–61. In the amended complaint, Lim provided additional allegations regarding contract formation, including the January 2015 email exchange, ¶¶ 9–11, and the draft letter agreement, ¶¶ 20–24. Defendants have moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 36.

## II.  LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Koch*, 699 F.3d at 145. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The purpose of Rule 12(b)(6) "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). To state a plausible claim, the plaintiff must "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### III. DISCUSSION

#### A. Breach of Contract

This Court previously found that Lim failed to state a claim for breach of contract because the original complaint failed to sufficiently plead contract formation. *Lim*, 2022 WL 2292768, at *4. The Second Circuit agreed. *Lim*, 2023 WL 2440160, at *2. Specifically, Lim failed to "sufficiently plead the existence of a contract because he [did] not provide factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms, including under what circumstances [Lim] could demand payment." *Id.*

In the amended complaint, Lim provided additional allegations regarding contract formation, including the January 2015 email exchange, ¶¶ 9–11, and the draft letter agreement, ¶¶ 20–24. Defendants continue to assert that Lim fails to plead contract formation, defeating his breach of contract claim. Doc. 37 at 6. The Court need not resolve the issue of contract formation, however, because even assuming a contract was formed, the breach of contract claim is barred by the statute of frauds, and the amended complaint insufficiently alleges a breach.

1. *Statute of Frauds*

Lim claims that Radish Media breached the parties' agreement by refusing to provide the equity interest he earned during his employment. ¶¶ 41–46. Radish Media argues that the amended complaint is barred by the statute of frauds under both New York and California law because the terms of the agreement described by Lim could not be performed within one year, and the amended complaint does not allege any agreed-to written memorandum containing all the material terms of the contract. Doc. 37 at 12–19.

Under New York law, an agreement that cannot be performed within a year of its making is unenforceable if not in writing. *Santos v. Medina*, 417 F. Supp. 3d 280, 288 (S.D.N.Y. 2019).[2] When determining whether the statute of frauds applies, the question is "not what the probable, or expected, or actual performance of the contract was; but whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year." *D&N Boening, Inc. v. Kirsch Beverages, Inc.*, 472 N.E.2d 992, 993 (N.Y. 1984) (citation omitted).

As the Court explained in its previous opinion, the agreement as alleged could not be performed within one year, and the complaint failed to provide a sufficient writing. *Lim*, 2022 WL 2292768, at *5. Lim alleges that, under the agreement, he was to receive a salary of $54,000 and a 1.2% equity interest in the company, which was later increased to 1.5%. ¶¶ 10–17. One-quarter of the equity interest granted to Lim would vest after one year of employment, and the remainder was to vest at 1/48 per month until the entire grant was vested. ¶ 12. According to Lim, he and Radish Media had "reached an *oral* agreement confirmed by email." ¶ 41 (emphasis added). The Court previously held that the agreement could not be performed within a year since the equity would not vest within a year, relying on *Seely v. Tuzman*, No. 108746/05, 2006 WL 6569339 (N.Y. Sup. Ct. Oct. 18, 2006). *Lim*, 2022 WL 2292768, at *5. The Court observed: "In *Seely*, where

---

[2] As the Court noted in its previous opinion, a choice of law analysis is unnecessary because New York and California law "are in agreement with each other in that an agreement that cannot be performed within a year from the making thereof is invalid if not in writing." *Lim*, 2022 WL 2292768, at *5.

7

the parties entered into an oral contract, giving plaintiff an equity interest in which a portion vested immediately and the remainder vested in equal portions over six years, the court held the agreement could not, by its terms, be completed within a year since the interest would vest over a six-year period." *Id.*

The Second Circuit agreed that Lim's claim was barred by the statute of frauds, nonetheless noting that at-will employment agreements generally need not be in writing. *Lim*, 2023 WL 2440160, at *2. Lim now argues that since his agreement was for at-will employment, it is not controlled by the statute of frauds. Doc. 38 at 16–18. However, courts have explained that commission agreements fall outside the statute of frauds "only to the extent they contemplate payment of commissions earned *during* the period of employment (even if paid afterward)." *Moshan v. PMB, LLC*, 36 N.Y.S.3d 445, 447 (App. Div. 2016). Since the equity grant would not have been "fixed and earned" had the agreement been terminated within one year, the agreement concerning the equity portion of his compensation is within the statute of frauds. *See BPP Wealth, Inc. v. Weiser Cap. Mgmt., LLC*, 623 F. App'x 7, 14 (2d Cir. 2015) (finding that the statute of frauds did not bar enforcement of agreements that "included promises of annual payments that would become 'fixed and earned' within a year on a recurring basis, even if amount calculation and tender would not occur until the next calendar year").

Lim now argues that the emails detailed in the amended complaint satisfy the statute of frauds, Doc. 38 at 18–21, as they confirmed his oral agreement. ¶ 10. However, under the statute of frauds, Lim must show that there was a signed agreement "establishing a contractual relationship" rather than merely "suggesting there existed an oral or otherwise unsigned agreement." *Transition Investments, Inc. v. Allen O. Dragge, Jr. Fam. Tr.*, No. 11 Civ. 04775 (AJN), 2012 WL 1848875, at *9 (S.D.N.Y. May 21, 2012).

The emails that Lim claims confirm his oral agreement fail to sufficiently "set forth all relevant terms of the agreement," and thus they do not satisfy the statute of

8

frauds. *Newmark & Co. Real Est. Inc. v. 2615 E. 17 St. Realty LLC*, 914 N.Y.S.2d 162, 164 (App. Div. 2011). An email exchange may promulgate a valid contract only where all essential terms of the agreement are chronicled. *See, e.g.*, *Meltzer, Lippe, Goldstein & Breitstone, LLP v. Malfetti*, No. 16 Civ. 1637 (DRH) (ARL), 2018 WL 4627667, at *9–10 (E.D.N.Y. Sept. 27, 2018) (noting that an email exchange may create an enforceable contract where it sets forth all essential terms), *aff'd*, 777 F. App'x 571 (2d Cir. 2019). Lim's January 22 email makes clear that all major terms were not agreed to. Specifically, the email stated: "terms/perks discussed before and to be determined. Happy to discuss derivations, intangibles, etc. and articulate my opinion more if you like." ¶ 11. Lim does not detail when the terms and perks had been "discussed before." Moreover, the email fails to note the type of equity or when it would be acquired, and thus it lacks the specific trigger under which Lim could demand performance. *See Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016) (noting that allegations of contract formation must include "the specific provisions of the contract upon which liability is predicated" (citation omitted)); *see also Sirohi v. Trustees of Columbia Univ.*, No. 97-7912, 1998 WL 642463, at *2 (2d Cir. Apr. 16, 1998) (holding that plaintiff must "allege the essential terms of the parties' purported contract 'in nonconclusory language,' including the specific provisions of the contract upon which liability is predicated" (quoting *Sud v. Sud*, 621 N.Y.S.2d 37, 38 (App. Div. 1995))).

The unsigned offer letter received by Lim after he left his employment at Radish Media in June 2016 also does not serve to show the formation of a contract. Lim's allegations relating to the letter lack "objective evidence establishing that the parties intended to be bound." *Michelen v. IEEE GlobalSpec*, No. 21-2000, 2022 WL 16557968, at *2 (2d Cir. Nov. 1, 2022) (quoting *10 Ellicott Square Ct. Corp. v. Mountain Valley Indemnity Co.*, 634 F.3d 112, 124 (2d Cir. 2011)). Lim alleges that Lee told him not to sign the offer letter, ¶ 28, and there is no evidence that the parties intended to be bound by the unsigned draft letter. Thus, the draft letter agreement does not satisfy the statute of

frauds. *See Kelly v. P&G Ventures 1, LLC*, 50 N.Y.S.3d 163, 164 (App. Div. 2017) (holding that collective writings were insufficient to satisfy the statute of frauds because "there is no writing establishing a contractual relationship between the parties which bears the signature of the plaintiff, who is the party to be charged").

### 2. Breach

Even if the statute of frauds did not bar the breach of contract claim, Lim has not proffered sufficient facts to show a breach of the terms he details. Lim acknowledges that the vested shares would become available to him "once the appropriate plan had been put in place." ¶ 12. According to the draft letter attached to the amended complaint, Lim's equity grant was predicated on (1) Radish Media "establishing a Stock Option/Stock Issuance Plan for its service providers" and (2) "approval by the Company's Board of Directors to grant the options contemplated hereby." Doc. 35-1. Lim does not include any facts to suggest that these conditions were ever satisfied. *See generally Eternity Global Master Fund Ltd. v. Morgan Guaranty Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (noting that plaintiff must sufficiently allege "breach of contract by the defendant" to state a claim for breach of contract). Therefore, even if Lim alleged the existence of a contract, his claim would be dismissed for failure to allege a breach of that contract.

### B. Unjust Enrichment

Lim also brings a claim for unjust enrichment against Lee. ¶¶ 48–56. Lee argues that the unjust enrichment claim is barred by the statute of frauds as well. Doc. 37 at 20–21.

"To state a claim for unjust enrichment under New York law a Plaintiff must show that (1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 283 (S.D.N.Y. 2021) (citation omitted). "However, 'unjust enrichment is not a catchall cause of action to be used when others fail.'" *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d

370, 394 (S.D.N.Y. 2021) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello*, 967 N.E.2d at 1185. And "an unjust enrichment claim 'will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action.'" *Valcarcel*, 577 F. Supp. 3d at 283 (quoting *Campbell*, 516 F. Supp. 3d at 394).

As the Court explained in its previous opinion, the unjust enrichment claim against Radish Media was unduly duplicative of the breach of contract claim and also barred by the statute of frauds. *Lim*, 2022 WL 2292768, at *6–7. The Second Circuit agreed that Lim's unjust enrichment claim was correctly dismissed as an attempt to avoid the statute of frauds. *Lim*, 2023 WL 2440160, at *2. Lim now brings the unjust enrichment claim solely against Lee. ¶¶ 48–56.

Here, the unjust enrichment claim attempts to recover damages that are "dependent upon an oral agreement otherwise barred by the Statute of Frauds." *RTC Properties, Inc. v. Bio Resources, Ltd.*, 744 N.Y.S.2d 173, 175 (App. Div. 2002). As the Second Circuit concluded, Lim's original unjust enrichment claim, which was brought against Lee as well as Radish Media, was correctly dismissed. *Lim*, 2023 WL 2440160, at *2. Lim cannot, by now bringing the claim against just one instead of both defendants, "escape the Statute of Frauds by labeling his contract claim 'unjust enrichment.'" *Id.* Accordingly, Defendants' motion to dismiss Lim's claim for unjust enrichment is granted.

### C. Promissory Estoppel

Lim brings a promissory estoppel claim for the first time in the amended complaint. ¶¶ 57–61. Promissory estoppel requires three elements: (1) "a clear and unambiguous promise"; (2) "a reasonable and foreseeable reliance by the party to whom the promise is made"; and (3) "an injury sustained by the party asserting the estoppel by reason of his reliance." *ED Cap., LLC v. Bloomfield Investment Resources Corp.*, 757 F.

App'x 26, 29–30 (2d Cir. 2018) (citation omitted).[3]  "Each element must be present before a promissory estoppel claim can be sustained." *Tarzy v. Dwyer*, No. 18 Civ. 1456 (AT), 2021 WL 4134805, at *3 (S.D.N.Y. Sept. 10, 2021) (quoting *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 734 (S.D.N.Y. 1989)).  Where, as here, a contract is barred by the statute of frauds, New York law adds a heightened injury element requiring a plaintiff to demonstrate "unconscionable" injury.  *Aleem v. Experience Hendrix, L.L.C.*, No. 16 Civ. 9206 (ER), 2017 WL 3105870, at *6 (S.D.N.Y. July 20, 2017); *In re Est. of Hennel*, 80 N.E.3d 1017, 1022 (N.Y. 2017).

Lim alleges that Lee, on behalf of Radish Media, promised the equity grant if Lim left his job and came to work for Lee.  ¶¶ 58–60.  However, as Lim acknowledges, the equity grant was conditioned on, among other things, implementation of an "appropriate plan."  ¶ 12.  Because Lim has not alleged that the conditions of the promise were met, Radish Media's obligation has not commenced.  *See Brenner v. Brenner*, 821 F. Supp. 2d 533, 542 (E.D.N.Y. 2011) (finding that because a promise's condition had not occurred, the obligation was not triggered, and thus dismissing a claim for promissory estoppel as insufficiently pleaded); *Aguinaldo v. Ocwen Loan Servicing, LLC*, No. 12 Civ. 01393 (EJD), 2012 WL 3835080, at *4 (N.D. Cal. Sept. 4, 2012) ("Where an alleged promise is conditional or subject to further negotiations, the 'clear and unambiguous' requirement for promissory estoppel is not met.").

Lim specifically argues that his claim for promissory estoppel should succeed under California law.  Doc. 38 at 23–24.  According to Lim, the statute of frauds is not applicable to promissory estoppel claims pursuant to California law, and thus New York's unconscionable injury requirement is not present.  *Id.*  However, since Lim fails to proffer facts sufficient to show the existence of a clear and unambiguous promise, his claim fails under both California and New York law.  *See Aguinaldo*, 2012 WL 3835080, at *4;

---

[3] A promissory estoppel claim is subject to the same elements under California law.  *See Aguinaldo v. Ocwen Loan Servicing, LLC*, No. 12 Civ. 01393 (EJD), 2012 WL 3835080, at *3 (N.D. Cal. Sept. 4, 2012).

*Brenner*, 821 F. Supp. 2d at 542.  Accordingly, Defendants' motion to dismiss the promissory estoppel claim is granted.

### D.  Leave to Amend

Lim has requested leave to file a second amended complaint to address any deficiencies found by the Court.  Doc. 38 at 24–25.  Defendants, in turn, argue that Lim's request for leave to amend should be denied as futile.  Doc. 39 at 10.

Rule 15 instructs courts to "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, the Second Circuit reaffirmed the "liberal spirit" of Rule 15 and counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims.  797 F.3d 160, 190–91 (2d Cir. 2015) (citation omitted).  An amendment is futile and should not be granted if it "fails to cure prior deficiencies."  *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) (internal quotation marks and citation omitted).

Here, the motion to dismiss has been granted as to the breach of contract and unjust enrichment claims on similar bases as those previously identified by this Court and the Second Circuit.  *See Lim*, 2022 WL 2292768, at *4–7; *Lim*, 2023 WL 2440160, at *2. In light of Lim's failure to adequately remedy these deficiencies, leave to amend is denied as to the breach of contract and unjust enrichment claims.  *See*, *e.g.*, *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 351 (S.D.N.Y. 1999) ("[W]here a plaintiff is on notice of deficiencies in an initial pleading and has had the opportunity to cure them by a first amendment, dismissal with prejudice is proper when a complaint previously has been amended." (internal quotation marks and citation omitted)).

With regard to the promissory estoppel claim, it is possible that Lim could plead additional facts to remedy the deficiencies identified in this opinion without prejudicing Defendants.  Moreover, Defendants do not argue that leave to amend would result in

13

undue delay or prejudice. Accordingly, leave to amend is granted with respect to the promissory estoppel claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Lim's promissory estoppel claim is dismissed without prejudice. The breach of contract and unjust enrichment claims are dismissed with prejudice. Lim may file a second amended complaint with respect to the promissory estoppel claim by July 18, 2024. If Lim does not file a second amended complaint by that date, the case will be closed.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 36.

It is SO ORDERED.

Dated:   June 27, 2024
         New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.