UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────
JUN YOUNG LIM,

      Plaintiff,

– against –

RADISH MEDIA, INC., *and* SEUNG-YOON LEE,

      Defendants.
─────────────────────────────────────────

**OPINION & ORDER**

21 Civ. 4379 (ER)

Ramos, D.J.:

  Jun Young Lim brought this action against Radish Media, Inc. and Seung-Yoon Lee on May 14, 2021, alleging that he did not receive the contractual equity interest to which he was entitled based on his employment with Radish Media. Doc. 1. The Court first granted Defendants' motion to dismiss on June 24, 2022. *Lim v. Radish Media, Inc.*, No. 21 Civ. 4379 (ER), 2022 WL 2292768, at *1. The Second Circuit affirmed in part, vacated in part, and remanded for further proceedings. *Lim v. Radish Media Inc.*, No. 22 Civ. 1610, 2023 WL 2440160, at *3 (2d Cir. Mar. 10, 2023) (summary order). Lim then filed a first amended complaint reasserting claims for breach of contract and unjust enrichment in addition to a new claim for promissory estoppel. Doc. 35. The Court granted Defendants' motion to dismiss the amended complaint for failure to state a claim for breach of contract and unjust enrichment but granted leave to amend with respect to the promissory estoppel claim. *Lim v. Radish Media Inc.*, No. 21 Civ. 4379 (ER), 2024 WL 3227003, at *7 (S.D.N.Y. June 27, 2024). Lim filed a second amended complaint reasserting his claim for promissory estoppel. Doc. 41.

  Before the Court is Defendant's motion to dismiss Lim's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 44. For the reasons set forth below, Defendants' motion is GRANTED.

I.  **BACKGROUND**

   **A. Factual Background**

The Court presumes familiarity with its Opinion and Order filed on June 27, 2024, which details the facts and procedural history of this case. *See Lim*, 2024 WL 3227003. The Court reiterates here those facts necessary for its disposition of the instant motion in addition to those newly included in the second amended complaint. The Court accepts the allegations in the second amended complaint as true for the purposes of this motion. *See, e.g.*, *Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Lim is now a resident of New York but resided in California at the time he filed the original complaint. ¶ 1.[1] Radish Media is incorporated in Delaware with its principal place of business in New York. ¶ 2. Radish Media filed a certificate with the New York Secretary of State changing its name to Tapas Entertainment, Inc. on October 2, 2023. *Id.* Seung-Yoon Lee is a resident of South Korea. ¶ 3.

Radish Media is a publishing and digital media company that provides a mobile platform for the publication of serialized fiction. ¶ 6. Radish Media's predecessor company was called Byline Media. ¶ 7. Lee was the co-founder, chief executive officer ("CEO"), and a major shareholder of Radish Media and Byline Media at all relevant times. *Id.* As CEO, Lee had the authority to hire employees, set compensation, and enter into contracts on behalf of these companies. *Id.*

Lim and Lee are close friends who have known each other for at least thirteen years. ¶ 8. In January 2015, the two agreed that Lim would be hired as "Head of Product" for Byline Media with a start date of March 9, 2015. ¶ 9. Lim wrote to Lee in an email with the subject line "Contract" on January 22, 2015 that he was "already looking into how to exit [his previous employer's] firm (diplomatically)." ¶ 11. He wrote that he could start on March 9, 2015, for a 1.2% equity stake in the company and

---

[1] Unless otherwise noted, citations to "¶ _" refer to the second amended complaint, Doc. 41.

$4500 per month along with the other terms discussed, and said he was "[h]appy to discuss derivations, intangibles, etc. and articulate [his] opinion more if [he would] like." *Id.* Lee responded to Lim on January 23, 2015, saying that "[t]his all sound[ed] very good." *Id.* He also wrote: "We will draft a formal contract within a few weeks, but do consider basic terms all agreed with this email." *Id.* According to Lim, the terms of the employment agreement confirmed by the January 2015 email exchange included a salary of $54,000 per year and a 1.2% interest in the company, one quarter of which would vest on the one-year anniversary of his employment and after which 1/48th would vest each month thereafter. ¶ 12. The vested shares would become available to Lim "once the appropriate plan had been put in place." *Id.* Furthermore, Lim's employment would be "at-will." *Id.*

Lim left his prior employment with Indus Valley Partners and joined Byline Media on March 9, 2015 in reliance on Lee's encouragement. ¶¶ 13–14. Lim's base compensation at Indus Valley Partners was "significantly greater than the compensation Byline Media had agreed to pay him." ¶ 15. Soon after Lim began working for Defendants, they asked him to take on increased responsibilities in the company. ¶ 17. Defendants could not compensate him for his additional responsibilities and greater contribution to the company through a salary increase but allegedly promised that he would receive an increased equity stake equal to 1.5% of outstanding shares. *Id.*

According to Lim, Lee "took the company in a different direction" after facing pressure from investors and the company's board in 2016. ¶ 19. Byline was renamed Radish Media, though it was created from the same corporate entity as Byline. ¶ 20. Byline Media's founders and initial investors became shareholders and noteholders in Radish Media. *Id.* The majority of Byline Media's employees decided to leave the company, though Lim stayed. ¶¶ 20–21. Lim alleges that Lee, in an effort to retain him, assured him that his salary, equity stake of 1.5%, time of service, and vesting schedule would not reset if he stayed with Radish Media. ¶ 21. At Radish Media, Lim assumed

3

the following additional responsibilities, among others:  he became the registered agent for the company in the United States, was responsible for ensuring that Radish Media's app would launch on a tight deadline, and was tasked with bridging communication and cultural gaps between the technical team working in Korea and the primarily English-speaking content and customer support teams.  ¶¶ 22–25.  Lim alleges that Lee and Radish Media repeatedly urged him to stay with the company and promised him that he would be rewarded with an equity grant of 1.5%.  ¶ 27.  Lim further alleges that Lee asked him to be patient and assured him that the equity was his and that the paperwork would be formalized shortly.  *Id.*

Lim alleges that at some point during his time at Radish Media he was offered a position with another company that came with a salary increase and a significant financial upside, which he turned down in reliance on the Defendants' promise of a 1.5% equity stake.  ¶ 28.  Ultimately, however, at some time before April 2016, Lim provided Defendants with notice that he would be leaving Radish Media.  ¶ 29.  On April 27, 2016, after Lim announced his departure, Lee received the draft offer letter agreement from Radish Media's lawyers detailing Lim's terms of employment for the first time.  ¶¶ 29–30.  The draft letter read as though it was created before Lim started at the company, stating that Lee was "thrilled" that Lim would be joining Radish Media on March 1, 2015.  ¶ 31.  The initial draft had indicated that Lim was entitled to 1.5% of the founders' shares, though it should have instead entitled him to 1.5% of the founders' shares *and* employees' options pool.  ¶ 32.  A subsequent version of the letter corrected the terms for the equity grant, offering Lim a total of 536.6 shares.  ¶ 33.  The amended letter also stipulated that Lim's equity grant was subject to the approval of the company's board of directors to grant the options contemplated in the agreement.  Doc 41-1.  It further provided that "[t]he purchase of the shares [would] be subject to the terms and conditions contained in a stock option agreement between [Lim] and the Company."  *Id.* ¶ 4.

4

On June 20, 2016, Lim voluntarily left his employment at Radish Media. ¶ 34. Two days later, Lee emailed Lim the revised letter confirming his equity ownership and describing how the number of shares had been calculated. ¶ 35. The email said that Lim "will be vested until 20th June." *Id.* Lim alleges that Lee assured him that he owned the equity he was granted and that it would be awarded once certain adjustments were made. ¶ 37. However, he also alleges that Lee urged him not to sign the letter agreement when he left Radish Media because a proper employee equity plan was being formed, there was a stock split, and the number of shares were being adjusted. *Id.* Lim never signed the letter. ¶ 38.

Lim alleges that several of the early employees of Radish Media who now work for him have reported that Radish Media's employee stock plan was implemented in 2017 and that they received the equity grants Lee promised them. ¶ 39. He alleges that these promises were similar to the one Lee made to him; Lee offered these individuals modest salaries with the understanding that they would receive equity stakes in the company. *Id.* He alleges that had he signed the letter when it was presented to him, he would have been awarded his equity like these other employees. *Id.*

On several occasions after leaving Radish Media, Lim alleges that he sent inquiries to Lee about his equity interest. ¶ 41. The two men spoke on the phone, traded messages via a messaging app, and exchanged emails. *Id.* Lim alleges that Lee always acknowledged that Lim owned an equity share in Radish Media and that it would be transferred to him as soon as the company had resolved an ongoing lawsuit with a different former employee. ¶¶ 40–41. In an email from Lee to Lim on March 6, 2018, Lee wrote that he had calculated that 167.687 of the shares granted to Lim had vested by the time he left his employment. ¶ 42. Lim alleges that he believed Lee's promises that his equity would be transferred to him until February 2021, when he began to suspect he might not receive his equity. ¶¶ 44–45. In an email to Lee on February 22, 2021, Lim wrote: "It's been almost five years since I left the company, and for the past three to four

5

years, I've patiently waited to get this resolved and been understanding of your and Radish's situation . . . by a conservative estimation, I believe I'm owed $250,000+ . . . ." ¶ 45.  In March 2021, Lim's counsel contacted Defendants demanding the equity but Defendants refused this request.[2]  ¶ 46.

On May 11, 2021, Kakao Entertainment announced that it had agreed to acquire Radish Media for $440 million.  ¶ 47.  Based upon that valuation, Lim alleges that his interest in the company would have been worth as much as $2.2 million.  ¶ 54.

### B. Procedural History

Lim filed this action on May 14, 2021, approximately five years after he left Radish Media.  Doc. 1.  He sought a declaratory judgment that he was entitled to the equity interest earned during his employment.  *Id.* ¶¶ 27–35.  He also asserted a breach of contract claim against Radish Media and an unjust enrichment claim against both defendants.  *Id*. ¶¶ 36–51.  On November 5, 2021, Defendants moved to dismiss, arguing that the complaint was barred by the statute of limitations and, in the alternative, that Lim failed to plead a plausible cause of action.  Doc. 21.  On June 24, 2022, the Court granted the motion to dismiss, finding that Lim's claims were barred by the statute of limitations and failed on alternative grounds:  Lim failed to state a claim for breach of contract, his breach of contract claim was barred by the statute of frauds, and his declaratory judgment and unjust enrichment claims were impermissibly duplicative of his breach of contract claim.  *Lim*, 2022 WL 2292768, at *2–7.  The Court denied leave to amend because no set of facts could cure the complaint's deficiencies with respect to the statute of limitations.  *Id.* at *7.

The Second Circuit affirmed this Court's judgment in part and vacated in part.  *Lim*, 2023 WL 2440160, at *1.  It concluded that it was not clear from the face of the

---

[2] The Court interprets the statement in the complaint that "[i]n March of 2021, plaintiff Lee's counsel contacted defendants and demanded the equity" to be a typographical error, and that it refers to outreach made by plaintiff *Lim*'s counsel.

6

complaint whether Lim's claims were barred by the statute of limitations, but that the Court had properly dismissed all claims on alternative grounds because Lim failed to state a claim for breach of contract, the breach of contract claim was barred by the statute of frauds, the declaratory judgment claim was unduly duplicative, and the unjust enrichment claim aimed to impermissibly bypass the statute of frauds. *Id.* at *2. The Second Circuit remanded for this Court to decide whether Lim should be permitted to amend the complaint. *Id.* at *2–3. This Court granted Lim leave to amend, and Lim filed a first amended complaint on November 29, 2023, asserting claims for breach of contract against Radish Media, unjust enrichment against Lee, and promissory estoppel against Radish Media. Doc. 35. This Court dismissed the breach of contract and unjust enrichment claims with prejudice and dismissed the promissory estoppel claim without prejudice on June 27, 2024. *Lim*, 2024 WL 3227003, at *7. Lim filed a second amended complaint with respect to the promissory estoppel claim on July 18, 2024. Doc. 41. Defendants now move to dismiss the second amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 44.

## II.    LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Koch*, 699 F.3d at 145. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). To state a plausible claim, the plaintiff must "'raise a

7

reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d. Cir. 2018) (quoting *Twombly,* 550 U.S. at 556). If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III. DISCUSSION

Lim reasserts his claim for promissory estoppel, based on multiple promises from Lee that Lim would receive 1.5% of the founder's shares and employee option pool vested over a period of time. ¶¶ 58–60. He argues that he relied on these promises and was damaged by his reliance on these promises in an amount to be proved at trial. ¶¶ 64–66. In the alternative, Lim requests leave to file a third amended complaint with additional facts about his residency and Lee's role on the board of Radish Media. Doc. 49 at 2.

### A. Promissory Estoppel

"Under New York law, promissory estoppel requires '(1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained by the party asserting the estoppel by reason of his reliance.'" *ED Capital, LLC v. Bloomfield Investment Resources Corp.*, 757 F. App'x 26, 29–30 (2d Cir. 2018) (quoting *PHL Variable Insurance Co. v. Mahler*, 321 F. Supp. 3d 392, 401 (E.D.N.Y. 2018)). "Each element must be present before a promissory estoppel claim can be sustained." *Tarzy v. Dwyer*, No. 18 Civ. 1456 (AT), 2021 WL 4134805, at *3 (S.D.N.Y. Sept. 10, 2021) (quoting *In re Gulf Oil/Cities Service Tender Offer Litigation*, 725 F. Supp. 712, 734 (S.D.N.Y. 1989)). Furthermore, as is the case here, "when a contract is barred by the statute of frauds, New York law adds a heightened injury element requiring a plaintiff to demonstrate 'unconscionable' injury." *See Lim*, 2024 WL 3227003, at *12 (citations omitted).

In its opinion on June 27, 2024 granting Defendants' motion to dismiss the first amended complaint for failure to state a claim for promissory estoppel, the Court found that "[b]ecause Lim ha[d] not alleged that the conditions of the promise were met, Radish Media's obligation ha[d] not commenced." *Id.* at *12 (citations omitted). In the revised complaint, Lim has introduced claims that an employee stock plan was implemented in 2017 and that multiple former Radish Media employees received the equity grants they were promised by Lee in 2016. ¶ 39. Yet there remain deficiencies in establishing that Defendants' acts constitute a clear and unambiguous promise. First, the complaint fails to establish that the plan Radish Media implemented in 2017 extended to him; unlike Lim, the other employees were still employed by Radish Media when the plan was established. *Id.* Second, there were other conditions that the second amended complaint fails to address. For example, the employment offer letter stipulated that Lim's equity grant was subject to the approval of the Company's Board of Directors to grant the options contemplated within the agreement. Doc 41-1 ¶ 4. It further provided that "[t]he purchase of the shares [would] be subject to the terms and conditions contained in a stock option agreement between [Lim] and the Company." *Id.* The complaint does not address whether either of these conditions were met during or after Lim's employment with Radish Media.

Because Lim has not alleged that all of the conditions of the promise were met, his complaint does not establish the existence of a "clear and unambiguous promise" under either New York or California law.[3] *See, e.g.*, *Brenner v. Brenner*, 821 F. Supp. 2d 533, 541 (E.D.N.Y. 2011) (finding that because a promise's condition had never commenced or occurred, Defendant's obligation "was never triggered"); *Aguinaldo v.*

---

[3] Lim's complaint indicates that "a substantial part of the events giving rise to this claim occurred in [New York]," ¶ 5, that Radish Media's principal place of business is New York, ¶ 2, and that Lim is currently a resident of New York but was a resident of California at the time of filing the original complaint. ¶ 1. However, because Lim's offer letter indicates that his place of work would be in San Francisco, Lim asserts that "New York's choice of law rules may require the Court to apply California law . . . ." Doc. 49 at 11. In either event, as discussed above, the Court's conclusion is the same.

*Ocwen Loan Servicing, LLC*, No. 12 Civ. 01393 (EJD), 2012 WL 3835080, at *4 (N.D. Cal. Sept. 4, 2012) ("Where an alleged promise is conditional or subject to further negotiations, the 'clear and unambiguous' requirement for promissory estoppel is not met.").

In his opposition brief, Doc. 49 at 13–16, Lim cites two cases to support his claim that the element of a clear and unambiguous promise is satisfied here. *See Christian v. TransPerfect Global, Inc.*, No. 17 Civ. 5554 (PKC), 2018 WL 4571674, at *8–9 (S.D.N.Y. Sep. 24, 2018) (finding Defendants' alleged promise to convey a 10% equity stake to an employee sufficiently clear and unambiguous to pass the pleading stage for a promissory estoppel claim); *Nevias v. Crystal Vision, LLC*, No. 23 Civ. 7075 (JPO), 2024 WL 3938262, at *8 (S.D.N.Y. Aug. 26, 2024) (holding that an email exchange containing a promise could plausibly constitute a clear and unambiguous promise for promissory estoppel claim). However, in neither case were the relevant promises contingent on unfulfilled conditions like board approval and the completion of a stock option agreement between the employer and employee. Thus, these cases are inapposite. Here, because Lee's alleged promise was conditioned on further negotiations that never occurred, the clear and unambiguous requirement has therefore not been sufficiently pled.

Even if Lim's claims that other employees received their equity shares established a clear and unambiguous promise, his claim fails to meet the second element of promissory estoppel: reasonable and foreseeable reliance. He argues that he relied on Defendants' promises to his detriment by resigning from his previous employment, accepting additional duties in addition to his role as Head of Product (without demanding an increase in salary) while working for Radish Media, refraining from taking alternative job offers, and failing to sign the offer letter because Lee asked him not to. *See* ¶ 61. However, his decisions at each of these junctures were subject to the will of the board and the creation of a plan that did not yet exist. In *Phansalkar v. Andersen Weinroth & Co., L.P.*, No. 00 Civ. 7872 (SAS), 2002 WL 1402297 (S.D.N.Y. June 26, 2002), *aff'd in*

10

*part, vacated in part*, 344 F.3d 184 (2d Cir. 2003), the court found that an employee could not have detrimentally relied on vague statements from his employer about increased allocations when he knew that all decisions about allocations would require the approval of others. *Id.* at *17. The facts here are similar: Lim knew from his initial conversations with Lee that a plan was not yet in place and that other individuals' input would be considered in creating that plan, yet he claims he relied on that future plan.

Because multiple elements of promissory estoppel are not met, the Court need not reach the question of whether Lim's complaint sufficiently pleads an injury meeting the "unconscionable" injury standard that New York applies when a contract is barred by the statute of frauds, as is the case here. *See Lim*, 2024 WL 3227003, at *7–10; *see also Aleem v. Experience Hendrix, L.L.C.*, 413 F. Supp. 3d 251, 260 (S.D.N.Y. 2019) (citations omitted) ("Where, as here, a contract is barred by the Statute of Frauds, New York law adds a heightened injury element requiring plaintiff to demonstrate 'unconscionable' injury."). Even so, his claim does not reach the level of unconscionability required. "An unconscionable injury" is an "injury beyond that which flows naturally . . . from the non-performance of the unenforceable agreement." *Bent v. St. John's University, N.Y.*, 138 N.Y.S.3d 199, 203 (N.Y. App. Div. 2020) (citation omitted). This court has held that, "[w]ithout more, [a] monetary injury" that is "precisely what would have flowed naturally from the enforcement of the promise . . . [is] hardly unconscionable." *Aleem*, 413 F. Supp. 3d at 262. Moreover, the doctrine of promissory estoppel is reserved for "limited" and "rare" cases; "the strongly held public policy reflected in New York's Statute of Frauds would be severely undermined if a party could be estopped from asserting it every time a court found that some unfairness would otherwise result." *Id.* (quoting *In re Estate of Hennel*, 80 N.E.3d 1017, 1023 (2017)). Because the sole injury alleged in Lim's complaint is the monetary injury that would result from Defendants' failure to comply with the alleged promise, he does not meet the heightened standard required under New York law.

11

Accordingly, Defendants' motion to dismiss the promissory estoppel claim is granted.

### B. Leave to Amend

Lim has requested leave to file a third amended complaint to address any deficiencies found by the Court. Doc. 49 at 21. Defendants argue that Lim's request for leave to amend should be denied as futile. Doc. 50 at 10.

Rule 15 instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, if a complaint "fails to cure prior deficiencies," an amendment is futile and should not be granted. *See Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) (internal quotation marks and citation omitted); *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 351 (S.D.N.Y. 1999) ("[W]here a plaintiff is on notice of deficiencies in an initial pleading and has the opportunity to cure them by a first amendment, 'dismissal with prejudice is proper when a complaint previously has been amended.'" (quoting *J.S. Service Center Corp. v. General Electrical Technical Services Co., Inc.*, 937 F. Supp. 216, 225 (S.D.N.Y. 1996))).

In this case, this Court previously held that because the alleged promise was conditioned on events that had not occurred, the claim failed as a matter of law. *See Lim*, 2024 WL 3227003, at *12. Lim's proposed additions include information about where he resided while working for Radish Media and about Lee's membership on the company's board of directors. Doc. 49 at 21–22. However, these proposed amendments do not relate to the other unfulfilled conditions on Lim's receipt of equity. Amending the complaint as indicated in the opposition brief would provide greater clarity on choice-of-law questions, yet those are not dispositive here; under either California or New York law, the complaint's failure to establish that there was a clear and unambiguous promise and that Lim reasonably and foreseeably relied on that promise preclude it from warranting further amendment. Therefore, leave to amend is denied.

IV. **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Lim's promissory estoppel claim is dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 44, and close the case.

It is SO ORDERED.

Dated:   June 10, 2025
         New York, New York

                                                        _____
                                                        EDGARDO RAMOS, U.S.D.J.

13